UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LAWRENCE BEASLEY #396740,

        Plaintiff,

v.

CONNIE HORTON, et al.,

        Defendants.

_____/

Case No. 2:19-cv-00189

Hon. Robert J. Jonker
U.S. Chief District Judge

### REPORT AND RECOMMENDATION

**I. Introduction**

This is a civil rights action brought by state prisoner Lawrence Beasley pursuant to 42 U.S.C. § 1983 for alleged constitutional violation arising from his confinement at the Chippewa Correctional Facility (URF). Beasley filed this civil action on September 24, 2019. Beasley alleges that he and his cellmates were bitten by parasites or bugs, which caused a rash and itching. Beasley asserts that he has not received proper medical care or treatment. Beasley says that Defendants' neglect amounts to cruel and unusual punishment, in violation of the Eighth Amendment.

There are six Defendants in this case: Warden Connie Horton, Medical Provider Brenda Buchanan, ARUS Jeffrey Clark, Medical Supervisor Melissa LaPlaunt, Nurse Ressie Stranaly, and ARUS Pancheri. All Defendants except Buchanan are employed by the Michigan Department of Corrections (MDOC). All Defendants have moved for summary judgment, asserting that Beasley failed to

exhaust his administrative remedies. (ECF No. 13 (Buchanan's motion), ECF No. 18 (MDOC Defendants' motion).)

Beasley filed a response that also appears to be a motion for summary judgment. (ECF No. 24.) In addition, on May 8, 2020, he filed a motion to amend his complaint that included materials relating to a grievance on which he relies to show exhaustion. (*See* ECF Nos. 25, 25-1 (citing URF 18-10-2810-03D).) The MDOC Defendants filed a response to Beasley's motion. (ECF No. 27.) This response could also be interpreted as a reply to Beasley's response.

Regardless of the titles of the various pleadings, the undersigned has considered all of filings filed by the parties relating to exhaustion. The undersigned respectfully recommends that the Court grant Defendants' motions and dismiss this case without prejudice due to Beasley's failure to exhaust his administrative remedies.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one

---

[1] Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial or evidentiary hearing and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions

under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal

review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

5

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for

filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the

7

PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

### IV. Plaintiff's Allegations

Plaintiff's allegations are summarized in the table below.

| Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|
| Eighth Amendment violations due to exposure to parasite or bugs in prison cell. | Horton, Buchanan, Clark, LaPlaunt, Stranaly, and Pancheri. | May 2018 to present |

### V. Grievance Identified by Defendants

In their motion for summary judgment, Defendants Horton, Buchanan, Clark, LaPlaunt, Stranaly, and Pancheri identified only one grievance that Beasley filed and exhausted with MDOC. They claim that this grievance is not relevant to Beasley's

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

8

complaint and that Beasley failed to exhaust a grievance on the claims asserted in this action. This grievance is summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| URF-18-11-3145-12D2 (ECF No. 12-2, PageID.73-77.) | Buchanan and Jane Doe health care providers | Did not receive timely medical care for broken foot | 10/16/18 | Denied | Denied | Denied |

### VI. Additional Grievance Identified by Beasley

In the various filings, Beasley identified one other grievance that he filed with MDOC. Defendants point out that Beasley did not exhaust this grievance by appealing to Step III. This grievance is summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| URF-18-10-2810-03D (ECF No. 26-1, PageID.164-167.) | ARUS, Health Service, Salomon, Pancheri, and LaPlaunt. | Requests to have his cell exterminated and for medical care. | 9-25-18 | Denied because no bed bugs. Pest control service tested and confirmed on 10/10/18. | Denied | No record that Step III was submitted. |

### VII. Analysis

Beasley exhausted grievance **URF-18-11-3145-12D2** by appealing the denial of the grievance through Step III of the grievance procedures. That grievance only involved a delay in receiving medical care for his broken foot. Beasley has not

9

asserted any claim in this case involving his broken foot. Therefore, grievance **URF-18-11-3145-12D2** could not have exhausted any claims asserted in this action.

Grievance **URF-18-10-2810-03D** was filed at Step I against non-Defendant Salomon, and Defendants Pancheri and LaPlaunt. However, that grievance was not appealed to Step III. Defendants have attached an MDOC Prisoner Step III Grievance Report on Beasley for January 1, 2013 to November 18, 2019. This report shows each grievance that Beasley had submitted through Step III. (ECF No. 19-3, PageID.125.) The report show that Beasley exhausted only one grievance through Step III of the grievance procedures – **URF-18-11-3145-12D.**

Grievance **URF-18-10-2810-03D** is not on the list of grievances that Beasley exhausted through Step III. Beasley has attached a Step II/Step III form to his amended complaint showing that he filled out the Step III portion of the grievance:



(ECF No. 25-1, PageID.151.)  The MDOC has no record that the Step III grievance was sent to the Grievance and Appeals section.  Over two years later, in January of 2020, Beasley apparently inquired about the Step III response in grievance and received this response:

11

> **MICHIGAN DEPARTMENT OF CORRECTIONS**
>
> "Committed to Protect, Dedicated to Success"
>
> **MEMORANDUM**
>
> Date:    1/2/20
>
> To:    396740 Beasley (H-151)
>
> From:    M. McLean, URF Grievance Coordinator
>
> Subject:    URF 18 10 2810 03D
>
> I have not received a copy of this Step III response. Generally, Step III responses will be responded to within 60 business days. You may request the status of filed Step III grievances at any time by writing to the Office of Legal Affairs, Grievance Section, Grandview Plaza, P.O. Box 30003, Lansing, Michigan 48909.

(ECF No. 5-1, PageID.149.)

The records before the Court indicate that Beasley filed a Step I grievance against Defendants LaPlaunt and Pancheri relating to the bug infestation problem. Beasley filed a Step II appeal of the Step I response. But he failed to appeal the Step II decision to Step III by timely submitting his Step III appeal in grievance **URF-18-10-2810-03D** to the Grievance and Appeals Section. Thus the record establishes that Beasley failed to pursue this grievance to its conclusion at Step III and, accordingly, failed to exhaust any claims against Defendants LaPlaunt and Pancheri.

In the opinion of the undersigned, Beasley has not established that a genuine issue of material fact exists regarding whether he exhausted his administrative remedies against Defendants LaPlaunt and Pancheri in grievance **URF-18-10-2810-03D**.

In addition, Beasley failed to exhaust his claims against Defendants Horton, Buchanan, Clark, and Stranaly because he did not filed a grievance against them relating to the issue of whether his cell was infested with bugs or parasites.

## VIII. Recommendation

The undersigned respectfully recommends that this Court grant Defendants' motions for summary judgment (ECF Nos. 13 and 18) and dismiss the complaint without prejudice due to Beasley's failure to exhaust his administrative remedies against each Defendant on the claims asserted in his amended complaint.

Dated:   July 21, 2020                                  /s/ *Maarten Vermaat*
                                                        MAARTEN VERMAAT
                                                        U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).